UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| AMAZON.COM, INC., <br><br> Plaintiff, <br><br> v. <br><br> STRAIGHT PATH IP GROUP INC, <br><br> Defendant. | Case No. 5:14-cv-04561-EJD <br><br> **ORDER DENYING DEFENDANT'S MOTION TO DISMISS; GRANTING MOTION TO TRANSFER VENUE** <br><br> Re: Dkt. No. 14 |

Presently before the Court is Defendant Straight Path IP Group, Inc.'s ("Straight Path" or "Defendant") Motion to Dismiss for lack of subject matter jurisdiction over Plaintiff Amazon.com, Inc.'s ("Amazon" or "Plaintiff") Complaint for Declaratory Judgment pursuant to Federal Rule of Civil Procedure 12(b)(1). Docket Item No. 14. Alternatively, Defendant requests a transfer to the Eastern District of Virginia, which it believes is the proper venue for this action. See id.

Having reviewed the parties' submissions, the Court DENIES Defendant's Motion to Dismiss for lack of subject matter jurisdiction and GRANTS Defendant's Motion to Transfer Venue.

**I. BACKGROUND**

Amazon's Complaint for declaratory judgment arises from patent infringement actions filed in 2013 in the Eastern District of Virginia by Straight Path. See Dkt. No. 36 at 2. Amazon

1
Case No.: 5:14-cv-04561-EJD
ORDER DENYING DEFENDANT'S MOTION TO DISMISS; GRANTING MOTION TO TRANSFER VENUE

alleges that an actual controversy exists between Amazon and Straight Path regarding whether Amazon's technology infringes U.S. Patent Nos. 6,009,469 (the "'469 patent"), 6,108,704 (the "'704 patent"), and 6,131,121 (the "'121 patent") (collectively, the "patents-in-suit"). See Dkt. No. 36 at 2. Straight Path has filed numerous suits, in various jurisdictions, against consumer electronic companies based on their sale of Internet-enabled devices (e.g., SmartTVs, Blu-ray players, tablets, or smartphones) with preinstalled video-streaming applications. See id. Among its many targets are Amazon's technology partners, including LG Electronics, Inc. and its related entities ("LGE") and VIZIO, Inc. ("VIZIO"), both of whom Straight Path sued in the Eastern District of Virginia. See id. at 3. However, these actions have been stayed pending (1) the outcome of a currently-pending appeal to the Court of Appeals for the Federal Circuit relating to the patentability of the patents-in-suit, and (2) three requests for *inter partes* review challenging the patentability of the patents-in-suit. See id. at 4. The parties to the Eastern District of Virginia actions agreed that a stay pending resolution of the *inter partes* reviews and Straight Path's appeal would likely narrow the issues and conserve judicial resources. See id.

On October 17, Straight Path served its Preliminary Infringement Contentions in the EDVA Actions targeting Amazon Instant Video, among other video-streaming services. See Dkt. No. 23-4 at 5. Amazon Instant Video is an on-demand Internet video service that provides millions of users direct access to over 140,000 movies and television episodes through over 500 devices, including SmartTVs, Blu-ray players, game consoles, and smartphones. See Dkt No. 24-8 (Declaration of Saina S. Shamilov in Opposition to Straight Path's Motion to Dismiss ("Shamilov Decl."), Ex. A.). These devices are manufactured and sold by myriad electronics companies, including LGE and VIZIO. See id. Ex. B.

Amazon designed, developed, and now provides the Amazon Instant Video service through a cloud network it controls and operates. See Dkt. No. 23-4 at 2. That network hosts the video content that the Amazon Instant Video application accesses. See id. at 3. The application is provided by Amazon and is either pre-installed on consumer electronics devices such as LGE and VIZIO's devices, or made available by Amazon for users to download onto their compatible

1   devices.  See id.

2          Devices such as SmartTVs and Blu-ray players often come pre-loaded with various

3   software applications, including Amazon Instant Video.  See id.  To launch the Amazon Instant

4   Video application on one of these devices, the user first scrolls through the applications available

5   on the device and then selects the icon corresponding to Amazon Instant Video.  See id.  At that

6   point, the user is required to register the device with Amazon.  See id.  This process is illustrated

7   as follows:



16  See Shamilov Decl., Ex. D.  Once registered, the user has access to and can view thousands of

17  movies and television shows hosted by Amazon and made available through Amazon Instant

18  Video:




28

3
Case No.: 5:14-cv-04561-EJD
ORDER DENYING DEFENDANT'S MOTION TO DISMISS; GRANTING MOTION TO TRANSFER VENUE

1  See id. Amazon controls the Amazon Instant Video service from application launch, to content

2  selection, to streaming of video, to the user's viewing experience. See Dkt. No. 23-4 at 4. The

3  process is generally the same, regardless of what device is used to access the Amazon Instant

4  Video service. See id.

### i. Indemnification Provisions in Amazon's Agreements with LGE and VIZIO

[Text redacted, lines 6–16]

17  In its Complaint, Amazon alleges that: (1) Straight Path accuses LGE and VIZIO of

18  infringing the '469, '704 and '121 patents through their incorporation of Amazon Instant Video;

19  (2) Straight Path has sought discovery from Amazon to support these infringement claims; (3)

20  pursuant to their respective written agreements with Amazon, LGE and VIZIO have requested that

21  Amazon indemnify them against Straight Path's claims; (4) Straight Path has initiated suits against

22  other Amazon customers, including Samsung, and could assert substantially similar infringement

23  claims based on Amazon Instant Video; and (5) Amazon has a substantial interest in clearing any

24  uncertainty regarding potential infringement of the Amazon Instant Video service by defeating

25  Straight Path's claims. Dkt. No. 1 at ¶¶ 8-24.

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(1)

Under Rule 12(b)(1), a party may file a motion to dismiss for lack of subject matter jurisdiction. A Rule 12(b)(1) motion may be either facial or factual. Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004). A facial 12(b)(1) motion involves an inquiry confined to the allegations in the complaint, whereas a factual 12(b)(1) motion permits the court to look beyond the complaint to extrinsic evidence. Id. When a defendant makes a facial challenge, all material allegations in the complaint are assumed true, and the court must determine whether lack of federal jurisdiction appears from the face of the complaint itself. Id.

Federal courts are courts of limited jurisdiction, adjudicating only cases which the Constitution and Congress authorize. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). "A party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction." Thompson v. McCombe, 99 F.3d 352, 353 (9th Cir. 1996). If a court determines that it lacks subject matter jurisdiction, the court must dismiss the action. Fed. R. Civ. P. 12(h)(3).

### B. Motion to Transfer

Pursuant to 28 U.S.C. 1404(a), "a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented" if such a transfer is convenient to the parties and witnesses. The purpose of § 1404(a) is to "prevent the waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." Van Dusen v. Barrack, 376 U.S. 612, 616 (1964).

To determine whether transfer is appropriate, the court first examines whether the action could have been brought in the district to which transfer is sought. See Hatch v. Reliance Ins. Co., 758 F.2d 409, 414 (9th Cir. 1985) ("In determining whether an action might have been brought in a district, the court looks to whether the action initially could have been commenced in that district." (internal quotation marks and citations omitted)). If the proposed district is a viable one,

5

Case No.: 5:14-cv-04561-EJD
ORDER DENYING DEFENDANT'S MOTION TO DISMISS; GRANTING MOTION TO TRANSFER VENUE

the court then goes through an "individualized, case-by-case consideration of convenience and fairness." Van Dusen, 376 U.S. at 622.

In addition to the convenience considerations enumerated by § 1404(a), the Ninth Circuit has identified other fairness factors that should be weighed by the court when considering a transfer: "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof." Jones v. GNC Franchising, Inc., 211 F.3d 495, 498-99 (9th Cir. 2000).

"No single factor is dispositive, and a district court has broad discretion to adjudicate motions for transfer on a case-by-case basis." Ctr. for Biological Diversity v. Kempthorne, No. 08-1339, 2008 U.S. Dist. LEXIS 84978, at *8, 2008 WL 4543043 (N.D.Cal. Oct. 10, 2008) (citing Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988); Sparling v. Hoffman Constr. Co., Inc., 864 F.2d 635, 639 (9th Cir. 1988)). A transfer may not be appropriate under § 1404(a) if it "would merely shift rather than eliminate the inconvenience." Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986). The party moving for transfer of a case bears the burden of demonstrating transfer is appropriate. See Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 279 (9th Cir. 1979)), opinion modified, 828 F.2d 1445 (9th Cir. 1987).

### III. DISCUSSION

#### A. Subject Matter Jurisdiction

Straight Path argues that Amazon's declaratory judgment Complaint should be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. See Dkt. No. 14 at 1. Specifically, Straight Path argues that there is no actual controversy between Amazon and Straight Path because it has not accused Amazon of infringing the patent-in-suit, nor has Straight Path sent Amazon a cease-and-desist letter or otherwise communicated any intent to sue Amazon. See Dkt.

No. 36 at 4. Straight Path also argues that it has not directed any affirmative acts toward Amazon, and no subject matter jurisdiction exists over Amazon claims. See id. The Court disagrees for the following reasons.

Subject matter jurisdiction in declaratory judgment actions asks "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007). A case or controversy must be "based on a real and immediate injury or threat of future injury that is caused by the defendants - an objective standard that cannot be met by a purely subjective or speculative fear of future harm." Prasco, LLC v. Medicis Pharm. Corp., 537 F.3d 1329, 1339 (Fed. Cir. 2008). Thus, in the patent context, "jurisdiction generally will not arise merely on the basis that a party learns of the existence of a patent owned by another or even perceives such a patent to pose a risk of infringement, without some affirmative act by the patentee." Id. When the conduct of the patentee can be "reasonably inferred as demonstrating intent to enforce a patent" against the declaratory judgment plaintiff, subject matter jurisdiction will arise, even when that intent is demonstrated implicitly. Hewlett–Packard Co. v. Acceleron LLC, 587 F.3d 1358, 1363–64 (Fed. Cir. 2009). The burden is on the party asserting declaratory judgment jurisdiction to establish that an Article III case or controversy existed at the time that the claim for declaratory relief was filed and that it has continued since. Danisco U.S. Inc. v. Novozymes A/S, 744 F.3d 1325, 1329 (Fed. Cir. 2014). "It is well-established that, in patent cases, the existence of a case or controversy must be evaluated on a claim-by-claim basis." Streck, Inc. v. Research & Diagnostic Sys., Inc., 665 F.3d 1269, 1281 (Fed. Cir. 2012).

Here, Amazon alleges that an actual controversy exists between Amazon and Straight Path regarding whether Amazon's technology – including the Amazon Instant Video service and application – infringes the patents-in-suit. See Dkt. No. 36 at 2. Amazon argues that by suing Amazon's customers and expressly asserting infringement claims against Amazon's technology,

1  Straight Path has engaged in an affirmative act directed at Amazon.[1]  Specifically, Amazon argues
2  that Straight Path's infringement contentions, which implicate Amazon's technology and identify
3  its end-user customers as direct infringers, create a controversy as to Amazon's potential liability
4  for infringement, thus meeting the case or controversy requirement for declaratory judgment
5  jurisdiction.[2]  Moreover, Amazon argues that these allegations, at the very least, "impliedly assert
6  indirect infringement" by Amazon.  See Microsoft Corp. v. DataTern, Inc., 755 F.3d 899, 903-904
7  (Fed. Cir. 2014).

In DataTern, the Federal Circuit addressed similar issues to those considered in this case. DataTern, Inc. ("DataTern") had previously sued several of Microsoft Corporation's ("Microsoft"), SAP AG and SAP America, Inc.'s (collectively, "SAP") customers, alleging infringement of both of the patents-in-suit.  See id. at 902.  DataTern had sent these customers claim charts alleging infringement based on the customers' use of SAP's and Microsoft's software products; the claim charts referred extensively to SAP and Microsoft functionality.  Id.  With respect to SAP, the claim charts as to both patents cited "to SAP-provided [product] user guides and documentation for each element of the representative claims."  Id.  With respect to Microsoft, for the first patent (the "'502 patent"), the claim charts cited to "Microsoft-provided [product] online documentation for each element of the representative claims."  Id.  For the second patent (the "'402 patent"), however, the claim charts cited only to third-party documentation (that is, documentation not provided by Microsoft) for several claim limitations.  Id.

In assessing whether subject matter jurisdiction existed over SAP's and Microsoft's declaratory judgment claims, the DataTern court found it "incorrect" to assume that a supplier has an automatic "right to bring [a] declaratory judgment action solely because their customers have

---

[1] See Dkt. No. 23-4 at 8; see also SanDisk v. STMicroelectronics, Inc., 480 F.3d 1372, 1380-81 (Fed. Cir. 2007) ("In the context of patent infringement, 'declaratory judgment jurisdiction . . . [requires] some affirmative act by the patentee' directed at the accused infringer.").
[2] See Dkt. No. 23-4 at 8; see also Arris Grp., Inc. v. British Telecomms., 639 F.3d 1368, 1375 (Fed. Cir. 2007) ("there is a controversy between the patentee and the supplier as to the supplier's liability for induced or contributory infringement based on the alleged acts of direct infringement by its customers.").

8
Case No.: 5:14-cv-04561-EJD
ORDER DENYING DEFENDANT'S MOTION TO DISMISS; GRANTING MOTION TO TRANSFER VENUE

1  been sued for direct infringement." Id. at 904.  It explained that there was no allegation in the case
2  that Microsoft or SAP were liable for direct infringement; as to indirect infringement, it required
3  Microsoft and SAP to point to "allegations by the patentee or other record evidence that establish
4  at least a reasonable potential that such a claim could be brought." Id. at 904-05.

5  Ultimately, the Federal Circuit held that there was subject matter jurisdiction over SAP's
6  claims as to both patents-in-suit.  There the DataTern court noted that the claim charts "provided
7  to the SAP customers allege direct infringement of the [patents] based on SAP's customers' use of
8  [particular SAP software]" and cited to "SAP-provided user guides and documentation for each
9  claim element." Id. at 905.  Thus, since the charts "show that SAP provides its customers with the
10 necessary components to infringe [the patents-in-suit] as well as the instruction manuals for using
11 the components in an infringing manner" SAP had established that a substantial controversy
12 existed as to whether it induced infringement. Id.  Subject matter jurisdiction also existed for
13 Microsoft's claims regarding the '502 patent, as the "claim charts cite to Microsoft-provided
14 online documentation for each limitation of [that patent's] representative claims." Id.  But with
15 respect to Microsoft's claims regarding the '402 patent, the DataTern court held that subject
16 matter jurisdiction did not exist.  The Federal Circuit explained that because the claim charts as to
17 this patent "cite exclusively to third-party ... documentation for several key claim limitations" they
18 did not "impliedly assert that Microsoft induced [the direct] infringement" at issue. Id.  Likewise,
19 with respect to contributory infringement, the DataTern court found that the claim charts did not
20 impliedly assert that Microsoft's product was not a staple article or commodity of commerce
21 suitable for substantial non-infringing use. Id. at 906.

22 With the holding of DataTern in mind, the Court addresses whether there is a justiciable
23 controversy with respect to the patents-in-suit.  At the outset, the Court notes that there is no
24 allegation here that Straight Path ever communicated directly with Amazon in any way, nor that
25 Straight Path ever directly threatened Amazon with suit.  If subject matter jurisdiction exists as to
26 some or all of these claims, it must emanate from implicit threats that Straight Path made to
27 Amazon by way of its communications to Amazon's customers.

1    Here, Amazon argues that Straight Path's infringement contentions against LGE and
2  VIZIO accuse Amazon Instant Video, which LGE and VIZIO pre-install on their consumer
3  electronics devices.  See Dkt. No. 23-4 at 5.  Specifically, Amazon argues that in the infringement
4  contentions against LGE, Straight Path accuses the Amazon Instant Video application and
5  Amazon servers with which it interacts: "[T]he Amazon application on the Accused Products
6  communicates with the Amazon server for the purpose of streaming media."  See id.  Amazon
7  asserts that in the infringement contentions against VIZIO, Straight Path includes similar
8  allegations identifying Amazon software and Amazon's end-users as direct infringers of the
9  patents-in-suit.  See id. at 6.  Therefore, Amazon alleges that Straight Path cites to an Amazon web
10 page and network traces between Amazon Instant Video application and an Amazon server as
11 purportedly satisfying all elements of the asserted claims.  See id. at 5.  Amazon argues that this
12 targeting of LGE and VIZIO by Straight Path in their infringement suits is similar to those found
13 to support subject matter jurisdiction in DataTern.

14   Straight Path contends that under DataTern, the Virginia Action cannot impliedly assert
15 induced infringement because they do not use Amazon-provided information to support the
16 alleged infringement of each key claim element.  See Dkt. No. 28-16 at 1.  Straight Path argues
17 that under DataTern, the Virginia Action is not an affirmative act against Amazon because several
18 of the claim elements in the Virginia Action are supported only with non-Amazon provided
19 material.  See id at 3.  Therefore, Straight Path asserts they are not affirmative acts capable of
20 supporting declaratory judgment jurisdiction.

21   However, Amazon cites to Straight Path's infringement chart targeting LGE and VIZIO
22 products running Amazon Instant Video[3] and argues that Straight Path identifies Amazon software
23 and servers as "satisfying all elements of the asserted claims."  See Dkt. No. 23-4 at 5.  For
24 example, in the infringement contentions against LGE, Straight Path accuses the Amazon Instant
25 Video application and Amazon servers with which it interacts: "[T]he Amazon Application on the

---

[3] See Dkt No. 24-8 (Declaration of Saina S. Shamilov in Opposition to Straight Path's Motion to Dismiss ("Shamilov Decl."), Ex. H).

10
Case No.: 5:14-cv-04561-EJD
ORDER DENYING DEFENDANT'S MOTION TO DISMISS; GRANTING MOTION TO TRANSFER VENUE

1  Accused Products communicates with the Amazon Server for the purpose of streaming media"[4]
2  and identifies Amazon's end-user customers as alleged direct infringers of the patents-in-suit:
3  "Where the Accused Products indirectly meet this limitation, the direct infringer is the device's
4  end user utilizing the Amazon Instant Video Application on an Accused Product."[5]  Further,
5  Straight Path cites to an Amazon web page and network traces (see below) between Amazon
6  Instant Video application and an Amazon servers as allegedly meeting this limitation.  See Dkt.
7  No. 23-4 at 5.

| No. | Time | Source | Destination | Protocol | Length | Info |
|---|---|---|---|---|---|---|
| 435 | 3.028182000 | 38.97.105.142 | 176.32.99.234 | TCP | 74 | 45169 > https [SYN] |
| 436 | 3.043628000 | 176.32.99.234 | 38.97.105.142 | TCP | 62 | https > 45169 [SYN, |
| 437 | 3.044856000 | 38.97.105.142 | 176.32.99.234 | TCP | 54 | 45169 > https [ACK] |

| No. | Time | Source | Destination | Protocol | Length | Info |
|---|---|---|---|---|---|---|
| 2142 | 47.334293000 | 38.97.105.142 | 176.32.99.234 | TCP | 74 | 45203 > https [SYN] |
| 2162 | 47.349987000 | 176.32.99.234 | 38.97.105.142 | TCP | 62 | https > 45203 [SYN, |
| 2372 | 47.605846000 | 38.97.105.142 | 176.32.99.234 | TCP | 54 | 45203 > https [ACK] |
| 2398 | 47.669723000 | 38.97.105.142 | 176.32.99.234 | TLSv1 | 287 | Client Hello |
| 2402 | 47.685613000 | 176.32.99.234 | 38.97.105.142 | TCP | 1514 | [TCP segment of a r |
| 2403 | 47.685726000 | 176.32.99.234 | 38.97.105.142 | TCP | 1514 | [TCP segment of a r |
| 2404 | 47.685872000 | 176.32.99.234 | 38.97.105.142 | TCP | 1514 | [TCP segment of a r |

16  Here, Straight Path alleges that "[t]he Vizio Product executes the Amazon Application and
17  forwards to the Amazon Server a network protocol address currently assigned to the first process
18  upon connection to the server; for example, the TCP SYN packet as observed in the network trace
19  test performed on the device includes the network protocol address currently assigned to the first
20  process" and that "the Amazon Application on the Vizio Product transmits to an Amazon Server a
21  query as to whether a second process is connected to the computer network to stream media."  See
22  Shamilov Decl., Ex. I at 6-7.
23  Indeed, in its infringement contentions, Straight Path explicitly identifies Amazon Instant
24  Video on LGE (see below) as satisfying the elements of the asserted claims and Amazon's end-
25  users as direct infringers of the patents-in-suit.  See Shamilov Decl., Exs. H-K.

---

[4] See Shamilov Decl., Ex. H at 2-3.
[5] See id. at 2.





Straight Path also cites to a screen shot taken from the Amazon website and alleges that "the Amazon Application on the Accused Products communicates with the Amazon Server for the purpose of streaming media. For example, the LG Product is able to interface with the Amazon Servers in order to stream videos." See Shamilov Decl., Ex. H at 2-3.

Similarly, in its infringement contentions against VIZIO, Straight Path includes materially identical allegations, again identifying Amazon software (see below) and servers as purportedly satisfying the elements of the asserted claims and Amazon's end-users as direct infringers of the patents-in-suit. See Shamilov Decl., Exs. I-K.





Case No.: 5:14-cv-04561-EJD
ORDER DENYING DEFENDANT'S MOTION TO DISMISS; GRANTING MOTION TO TRANSFER VENUE

Therefore, similar to DataTern, Straight Path relies on Amazon's provided material for each asserted claim element and not solely on third-party documentation for several key claim limitations.  See DataTern at 905.  Although Straight Path asserted that it never approached Amazon regarding licensing and never accused Amazon of infringement, Straight Path's infringement claims against LGE and VIZIO were based on LGE and VIZIO's use of Amazon's products.

[redacted]

Accordingly, substantial controversy existed because Straight Path's infringement claims

13

Case No.: 5:14-cv-04561-EJD
ORDER DENYING DEFENDANT'S MOTION TO DISMISS; GRANTING MOTION TO TRANSFER VENUE

against LGE and VIZIO strongly support the conclusion that the Court has jurisdiction. Moreover, Amazon's obligation to indemnify LGE and VIZIO alone creates a standing for jurisdiction. Therefore, the Court DENIES Straight Path's Motion to Dismiss for lack of subject matter jurisdiction.

**B.   Transfer**

Straight Path argues that this Court should decline jurisdiction in favor of Straight Path's case addressing similar issues in the Eastern District of Virginia because of judicial efficiency and economy. The Court agrees for the following reasons.

Under DataTern, the Federal Circuit has held that when "a case has already been filed against … customers in the Eastern District of Texas … [Plainitff] cannot seek a declaration from a New York court on behalf of customers they must indemnify where a suit against these very customers on all the same issues was already underway in a Texas court." See Futurewei Techs., Inc. v. Acacia Research Corp., 737 F.3d 704, 708 (Fed. Cir. 2013). Similarly, Amazon's Complaint arises from the patent infringement action in the Eastern District of Virginia, in which Straight Path accused Amazon's customers, LGE and VIZIO, of patent infringement on all the same issues as in this case. See Dkt. No. 1. Therefore, by agreeing to indemnify any one of their customers, Amazon could defend its customers and efficiently and effectively participate in the Virginia Action. See DataTern at 904.

As to whether this action could have been brought in the Eastern District of Virginia, Straight Path is based in Virginia and Straight Path has demonstrated that a similar case against LGE and VIZIO is already pending in Virginia. See Dkt. No. 14 at 2. The Virginia court will already have to commit significant resources to learning the relevant technology in this case. Amazon's case in this Court would require two federal district courts to duplicate work. Thus, Straight Path has met its burden on this level of the analysis. See 28 U.S.C. §§ 1391(b)(1), (2), (c)(2) (designating that a civil action may be brought in "a judicial district in which any defendant resides" or "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred," and specifying that, for venue purposes, a corporation shall be deemed to

14
Case No.: 5:14-cv-04561-EJD
ORDER DENYING DEFENDANT'S MOTION TO DISMISS; GRANTING MOTION TO TRANSFER VENUE

reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction.").

### i. Convenience of the Parties

"The convenience of the parties is … an important factor in determining whether to allow a transfer of venue." Jarvis v. Marietta Corp., No. C 98–4951, 1999 WL 638231 MJJ, at *4 (N.D. Cal. Aug. 12, 1999). In weighing this factor, "courts do not consider the convenience to parties that have chosen to bring a case in a forum where they do not reside." Brown v. Abercrombie & Fitch Co., No. 13–CV–05205 YGR, 2014 WL 715082, at *4 (N.D. Cal. Feb. 14, 2014) (citing Flint v. UGS Corp., No. C07–04640 MJJ, 2007 WL 4365481, at *3 (N.D. Cal. Dec. 12, 2007)).

Here, Straight Path argues that it would be more convenient to litigate this case in the Eastern District of Virginia because Amazon's complaint is grounded in an obligation to indemnify customers already sued in Eastern District, where the underlying customer suit is pending. See Dkt. No. 14 at 2. However, because Amazon is headquartered in Seattle, Washington and not in the Northern District, this Court does not consider the convenience to it. Therefore, this factor weighs in favor of transfer.

### ii. Plaintiff's Choice of Forum

Although maintaining venue would be marginally more convenient for Amazon, it is inconvenient for Straight Path's witnesses who reside in Virginia. This factor weighs strongly in favor of the transfer. See Amini Innovation Corp. v. JS Imps., Inc., 497 F. Supp. 2d 1093, 1111 (CD. Cal. 2007) ("The convenience of witnesses is often the most important factor in determining whether a transfer pursuant to § 1404 is appropriate.").

As to the factors outlined in Jones, Amazon's choice of this district favors maintaining the case here. But while this factor can sometimes be a weighty one under other circumstances, it is afforded less deference when the action is brought in a district in which the operative facts did not occur and in which the Plaintiff does not reside. See Costco Wholesale Corp. v. Liberty Mut. Ins. Co., 472 F. Supp. 2d 1183, 1191 (S. D. Cal. 2007) ("However, '[i]f the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter,' the

15
Case No.: 5:14-cv-04561-EJD
ORDER DENYING DEFENDANT'S MOTION TO DISMISS; GRANTING MOTION TO TRANSFER VENUE

1    plaintiff's choice receives 'minimal consideration.' " (quoting Lou v. Belzberg, 834 F.2d 730, 739
2    (9th Cir. 1987)).
3        Here, Amazon is headquartered in Seattle while Straight Path is from Virginia. See Dkt.
4    No. 23-4 at 1; see also Dkt. No. 14 at 2. However, Straight Path has already filed a suit in the
5    Eastern District of Virginia that will adjudicate similar issues raised by Amazon's declaratory
6    judgment complaint. See Dkt. No. 14 at 2. Amazon's action arises from indemnification requests
7    and allegations in the Virginia Actions. See id. Therefore, Amazon's claim involves a resident of
8    the Eastern District of Virginia, and stems from conduct (Straight Path's action against LGE and
9    VIZIO) that occurred within that district. In light of the fact that Amazon is not a resident of the
10   Northern District and that Amazon's claim stems from conduct that did not occur in this District,
11   this Court accords Amazon's choice of forum minimal deference.

### iii. Location Where Relevant Agreements Negotiated and Executed

In the Ninth Circuit, the location where the relevant agreements were negotiated and executed is a factor a court may consider in deciding a motion to transfer. Jones, 211 F.3d at 498. Here, the factor relating to the negotiation or execution of contracts is irrelevant since it is not alleged that Amazon's agreements with LGE and VIZIO are at issue. Therefore, this factor is neutral.

### iv. The Respective Parties' Contacts With the Forum

Both parties' contacts with the forum is also relevant to the transfer inquiry. Jones, 211 F.3d at 498. Here, Amazon has had some contact with the Northern District of California; it is home to one of Amazon's development facility. See Dkt. No. 23-4 at 1. However, Straight Path appears to have had no contact with the Northern District of California. Accordingly, because Amazon appears to have some contacts with the Northern District while Straight Path does not, this factor is also neutral.

### v. The differences in the Costs of Litigation in the Two Forums

Finally, while convenience to the parties' attorneys is "not an appropriate factor for the Court to consider when deciding a motion to transfer," see Wilson v. Walgreen Co., No. C–11–

2930 EMC, 2011 WL 4345079, at *5 (N.D. Cal. Sept. 14, 2011), the "differences in the costs of litigation in the two forums" is relevant, Jones, 211 F.3d at 498–99. Here, counsel for Amazon is located in the Northern District of California. However, Straight Path and its counsel are located in the Eastern District of Virginia. Although not directly addressed in the opposition, for both parties, the cost of litigation between California and Virginia has little significance since both should be prepared to litigate in either state. Thus this factor weighs in favor of transfer.

### vi. Convenience to the Witnesses

"The relative convenience to the witnesses is often recognized as the most important factor to be considered in ruling on a motion under § 1404(a)." Saleh v. Titan Corp., 361 F. Supp. 2d 1152, 1160 (S.D. Cal. 2005). In addition, "[w]hile the convenience of party witnesses is a factor to be considered, the convenience of non-party witnesses is the more important factor." Id. The moving party bears the burden of identifying the relevant witnesses and why it would be more convenient for them to testify in another venue. Florens Container v. Cho Yang Shipping, 245 F. Supp. 2d 1086, 1093 (N.D. Cal. 2002).

Although maintaining venue might be marginally more convenient for Amazon (Seattle headquarters), it is considerably inconvenient for Straight Path's witnesses who reside in Virginia. This factor, arguably the most important of them all, weight strongly in favor of the transfer. See Amini Innovation Corp. v. JS Imps., Inc., 497 F. Supp. 2d 1093, 1111 (C.D. Cal. 2007) ("The convenience of witness is often the most important factor in determining whether a transfer pursuant to § 1404 is appropriate.").

### vii. Interest of Justice

Finally, the Court finds that the applicable interest of justice factors favor transfer. In evaluating the interest of justice, a court may consider public interest factors such as court congestion, the local interest in deciding local controversies, conflicts of laws, and burdening citizens in an unrelated forum with jury duty. Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834 (9th Cir. 1986).

Here, the Virginia court will already have to commit significant resources to learning the

17
Case No.: 5:14-cv-04561-EJD
ORDER DENYING DEFENDANT'S MOTION TO DISMISS; GRANTING MOTION TO TRANSFER VENUE

relevant technology in this case. However, allowing this case to continue in California will only duplicate the workload of the courts, and could result in intervention here by manufacturers not indemnified by Amazon. There is no need for this Court to duplicate the work of the Virginia court and risk conflicting decision by sister courts. Thus, the Court finds that this factor tips in favor of transfer.

On balance, the judicial efficiency and convenience considerations applicable to an analysis under § 1404(a) weigh in favor of transferring this action to Eastern District of Virginia. Accordingly, Straight Path's Motion to Transfer is GRANTED.

## IV. CONCLUSION

Thus, to avoid extra expense and delay for both parties, the court finds that transfer, rather than dismissal, is appropriate here. Accordingly the court DENIES Defendant's Motion to Dismiss and GRANTS Defendant's Motion to Transfer. The Clerk shall transfer the file to the United States District Court for the Eastern District of Virginia and close the file.

**IT IS SO ORDERED.**

Dated: May 28, 2015



EDWARD J. DAVILA
United States District Judge

18
Case No.: 5:14-cv-04561-EJD
ORDER DENYING DEFENDANT'S MOTION TO DISMISS; GRANTING MOTION TO TRANSFER VENUE